## NATIONAL LABOR RELATIONS BOARD
v.
## PUERTO RICO S. S. ASS'N etc. et al.
### No. 4779.

United States Court of Appeals
First Circuit.
March 26, 1954.

George L. Weasler, San Juan, P. R. (George J. Bott, General Counsel, David P. Findling, Associate General Counsel, A. Norman Somers, Asst. General Counsel, and Samuel M. Singer and Ruth V. Reel, Attorneys, Washington, D. C., on brief), for petitioner.

Charles R. Hartzell, Rafael O. Fernandez and Jose L. Novas, San Juan, P. R., for respondents Puerto Rico S. S. Ass'n and its member companies.

James R. Beverley and Jose Lopez Baralt, San Juan, P. R., for respondent South Porto Rico Sugar Co.

Hipolito Marcano, San Juan, P. R., for respondent unions.

Before MAGRUDER, Chief Judge, and MARIS and WOODBURY, Circuit Judges.

PER CURIAM.

The National Labor Relations Board petitions for enforcement of an order issued March 30, 1953, after proceedings in the usual course upon a consolidated complaint under § 10(b) of the National Labor Relations Act, as amended, 61 Stat. 146, 29 U.S.C.A. § 160(b), against Puerto Rico Steamship Association together with its member companies and South Porto Rico Sugar Company, and also against various labor organizations as co-respondents.

It was found by the Board that by executing and enforcing contracts containing illegal hiring provisions, the employer-respondents thereby violated § 8 (a)(1)(2) and (3) of the Act, 29 U.S. C.A. § 158(a)(2, 3), and the respondent-unions thereby violated §§ 8(b) (1) (A) and 8(b)(2). The Board also found that the employer-respondents further violated § 8(a)(1) and (3) by discriminatorily denying work to twenty named longshoremen because of these unlawful contract provisions, and that the respondent-unions violated §§ 8(b) (1) (A) and 8(b)(2) by causing and attempting to cause such discrimination. Finally the Board found that the International Longshoremen's Association together with its president, respondent Moreno, and its respondent locals, during the period from October, 1951, to the middle of February, 1952, refused to bargain with the Puerto Rico Steamship Association by insisting upon continuing and including in any negotiated agreement illegal provisions for union security and preferential hiring, and by calling a strike to enforce such demands; thereby violating § 8(b) (3) of the Act as well as §§ 8(b) (1) (A) and 8 (b) (2).

To remedy the aforesaid unfair labor practices, the Board issued a cease and desist order in the usual terms against the various respondents. Affirmatively, the Board's order (1) required the employer-respondents to offer employment to the twenty named longshoremen discriminated against, by placing their

names on the employment lists and hiring them on a straight rotation basis without regard to their membership or non-membership in any union; (2) required the respondent-unions to notify the companies in writing that there was no objection to such employment of the longshoremen who had been discriminated against; (3) required all the respondents jointly and severally, both the employer-respondents and the union-respondents, to make whole the longshoremen discriminated against for any loss of pay they may have suffered by reason thereof, in the manner set forth in detail in the decision and order; (4) required the union-respondents to bargain collectively with the Puerto Rico Steamship Association upon request, and (5) required all the respondents to post appropriate notices.

■ Respondent South Porto Rico Sugar Company filed no exceptions whatever to the Trial Examiner's Intermediate Report and Recommended Order, as it had an opportunity to do under the Board's rules and regulations. Therefore this respondent is precluded from contesting in the court of appeals not only the substantive findings against it of unfair labor practices, but also the validity of the Board's remedial order. N.L.R.B. v. Auburn Curtain Co., Inc., 1 Cir., 1951, 193 F.2d 826.

■ Respondent Puerto Rico Steamship Association together with its member companies did, however, file exceptions to the Trial Examiner's report, not directed to the sufficiency of the evidence to support the findings by the examiner as to the commission of the unfair labor practices, but limited to a challenge of the appropriateness of a term of the recommended order that the employer-respondents and union-respondents should be held jointly and severally liable for the pecuniary losses suffered as a result of the discriminatory refusal to furnish employment to the various named longshoremen. In this court these respondents elected not to make any oral argument in opposition to the Board's petition for enforcement, but contented themselves with filing a brief statement in lieu of a brief. The Puerto Rico Steamship Association and its members maintained in this statement, as they had argued before the Board, that, should it be ultimately decided that they had engaged in any unfair labor practices, then in such event they should be held only secondarily liable, and the respondent-unions should be held primarily liable, to make whole the longshoremen discriminated against. Furthermore the statement recited that, should this court conclude as a matter of law that the employer-respondents together with the union-respondents are primarily liable for the unfair labor practices charged, "then the herein appearing respondents request that an order be entered enforcing the decision of the National Labor Relations Board."

The foregoing objection to the order with reference to back pay is not well-taken. N.L.R.B. v. Pinkerton's National Detective Agency, Inc., 9 Cir., 1953, 202 F.2d 230, 231–232. Both the employers and the unions have done acts which brought about the discrimination, and thus have each been guilty of unfair labor practices; and so far as liability is concerned, it is no matter that the employer-respondents may have committed the unlawful discrimination in response to coercive tactics by the unions. A back pay order might have been directed against the employers alone in a proceeding wherein there was no charge or complaint issued against the union. Katz v. N.L.R.B., 9 Cir., 1952, 196 F.2d 411, 416. Conversely, a back pay order might have been issued against the union alone in a proceeding wherein there was no charge or complaint against the employers also guilty of the discriminatory practices, as this court held in N.L.R.B. v. Local 57, International Union of Operating Engineers, 1953, 201 F.2d 771, 774. And see the last paragraph in the opinion of the Supreme Court in Radio Officers' Union

etc., v. N.L.R.B., 1954, 347 U.S. 17, 54–55, 74 S.Ct. 323. Where, as in the present case, a consolidated complaint was issued both against the offending employers and the offending labor organizations, it is clearly within the broad discretionary power of the Board, in fashioning appropriate remedies, to make the liability for back pay joint and several in order to protect the employees from insolvency or other impossibility of compliance by any party. The Board has filed a supplemental memorandum in this case at our request, explaining how it would normally proceed to secure compliance with such an order in case this court should decree enforcement according to its terms. The Board avers that in attempting to secure compliance in such cases it "customarily takes all reasonable measures to assure that the burden of making the employees whole is borne equally by the employer and the union." These details do not concern us at the present stage, though they might be relevant in a subsequent contempt proceeding.

The various respondent-unions did file exceptions to the Trial Examiner's report attacking his findings as to the responsibility of the unions for the various alleged unfair labor practices. In this court they have not consented to the entry of an enforcement decree against them. But they did elect to submit the case on the record, neither filing a brief nor offering any oral argument. Under these circumstances we do not feel called upon to make a detailed recital of the facts in evidence. We content ourselves with stating our conclusions on the record as a whole (1) that the jurisdiction of the Board sufficiently appears; (2) that the various findings of the Board as to the unfair labor practices are warranted by substantial evidence, and (3) that the terms of the Board's order are appropriate in view of the particular unfair labor practices sought to be redressed.

A decree will be entered enforcing the order of the Board.