**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**KELLER LADDERS SOUTHERN, INC. and Keller Industries, Inc., Respondents.**

No. 25049.

United States Court of Appeals Fifth Circuit.

Dec. 18, 1968.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Corinna Lothar Metcalf, Atty., N. L. R. B., Washington, D. C., for petitioner.

Joseph A. Caldwell, Miami, Fla., for respondents.

Seymour A. Gopman, Miami Beach, Fla., for intervenor—Local 666, Concrete Products and Material Yard Workers Union.

Before BELL and SIMPSON, Circuit Judges, and ROBERTS, District Judge.

BELL, Circuit Judge:

This case is a little different from the run-of-mine labor case which comes to us. Here the Union [1] shares in the force of the blow from the Board. The charging

---

1. Intervenor Local 666, Concrete Products and Material Yard Workers Union, Allied Industrial Division, International Hod Carriers, Building and Common Laborers' Union of America, AFL–CIO.

party was another Union;[2] hence a contest largely between two unions was forecast. We enforce, however, because of employee rights; not because of the rights of the Charging Union.[3]

We have become increasingly concerned with the franchise rights of employees in labor relations matters vis-a-vis rights of employers and unions. In NLRB v. Lake Butler Apparel Company, 5 Cir., 1968, 392 F.2d 76, a case involving the validity of union representation cards, we characterized the problem in the context of protecting the franchise through the use of the secret ballot:

> "The rights involved are those of the employees. The right is to join or not join a union. The right is to be exercised free from coercion from any quarter. This can be insured by the use of the secret ballot and by the laboratory conditions which the Board so wisely requires. * * *" 392 F. 2d at p. 82

See also NLRB v. Southland Paint Company, 5 Cir., 1968, 394 F.2d 717, 726. Again, in NLRB v. Mid-States Metal Products, Inc., 5 Cir., 1968, 403 F.2d 702 we stated with respect to the National Labor Relations Act, citing NLRB v. Schwartz, 5 Cir., 1945, 146 F.2d 773, 774:

> "[The] Act was passed for the primary benefit of the employees as distinguished from the primary benefit to labor unions, and the prohibition of unfair labor practices designed by an employer to prevent the free exercise by employees of their wishes in reference to becoming members of a union was intended by Congress as a grant of

rights to the *employees* rather than a grant of power to the union."

Having these postulates in mind, we turn to this appeal. The principal issue presented is whether Respondent-Employers violated § 8(a) (2) and (1) of the Act by interfering with the formation of a labor organization (Local 666), or by contributing financial or other support to a labor organization to the extent of interfering with, restraining, or coercing employees in the exercise of their rights under § 7 of the Act, 29 U.S.C.A. § 157, to self-organization and to join or to refrain from joining in such a movement.[4] There is one additional issue, to be discussed infra, of an 8(a) (1) violation stemming from a threat of discharge.

Respondents are two separate employers using contiguous business locations in Caldwell, Texas. The plant of one, Keller Industries, Inc., commenced hiring employees for the manufacture of chairs in January 1965. The other, Keller Ladders Southern, Inc., a wholly-owned subsidiary of the first, Keller Industries, Inc., began the manufacture of ladders in March 1965. The two employers shared office space, restroom and dining facilities. The plants were new businesses in Caldwell.

Keller Industries is a Florida corporation with its principal office in Miami, Florida. It operates wholly-owned subsidiaries and plants in various states. It was stipulated that it had contracts with at least six labor unions in plants throughout the country including the

2. United Steel Workers of America, AFL–CIO.

3. The Board's decision is reported. 161 NLRB No. 4.

4. 29 U.S.C.A. § 157:
"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection; and shall also

have the right to refrain from any or all of such activities * * *"
29 U.S.C.A. § 158(a) (1) and (2):
"(a) It shall be an unfair labor practice for an employer—
"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
"(2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it:"

United Steel Workers Union in plants in Georgia and Florida.

The separate complaints against the employers were tried together. The Trial Examiner concluded that each had unlawfully assisted and supported Local 666 through various activities which led to the organization of the workers in the two plants. The Board adopted the findings and conclusions of the Trial Examiner. We find an adequate basis in fact and law for this conclusion.

■ In addition, the Trial Examiner concluded that Keller Industries, Inc. threatened to discharge an employee if she did not sign a union authorization card on behalf of Local 666 and that this constituted a separate violation of § 8 (a) (1) of the Act. This finding, while virtually incredulous to us in light of the whole record, does have the bare support in the record which the law requires, in view of credibility choices, and the order will be enforced as to it. We will not, however, and we do not use it as a basis for our holding with respect to enforcing the order based on a violation of § 8(a) (2) and (1) of the Act.

The record discloses that Keller Industries commenced hiring employees for the chair plant on January 21, 1965. Production began on February 1 with fifty to fifty-five employees. On January 31, Sunday evening, a Local 666 representative from Miami arrived in Caldwell and called plant manager Prevost. The organizer stated that the Miami vice president of Keller Industries had given him the manager's phone number. He asked manager Prevost to give him two employees to help him organize the chair plant. He also assured the manager that Keller's Miami office had authorized him to give a speech to the Caldwell employees.

Prevost called his home office in Miami the next morning about the request of the organizer and was told "to go ahead and not to stick his nose in union business." We are not certain what this meant but the manager promptly selected two employees and drove them to the or-

ganizer's motel about three miles away. He introduced them to the organizer, sat in on the conversation between the organizer and the two employees during which meeting the organizer discussed Local 666 and the possibility of getting the two employees to pass out union cards among the other employees. The organizer obtained permission to hold an employee meeting the next morning in the plant at the ten o'clock coffee break. The two employees selected by the manager assembled the production employees for the meeting and the manager opened the meeting by introducing the union organizer. The manager stated that he knew a union would eventually want to organize the employees, that he would not try to keep a union out, that the employees could do what they wanted about it. He then left the meeting.

The organizer then promised certain additional benefits to employees including a pay raise. He stated that no dues would be deducted until the pay raises covered the amount of the dues. Cards authorizing Local 666 to represent the employees and also authorizing the company to deduct dues were passed out in the meeting. A number of employees signed and returned the cards at the meeting. Others were solicited during the day at their work stations to sign and return the cards. This solicitation was by the two employees, Humphries and Edwards, who had been selected by the manager to assist the organizer.

One employee inquired of the organizer, upon returning his signed card to the organizer at the meeting, whether Local 666 was a company union. The organizer replied, and we do not profess to know the meaning of the reply: "I have never waltzed with Mr. Keller and Mr. Keller has never waltzed with me." By the end of the day the organizer had forty-five signed cards in hand, took them to Miami, and negotiated a three-year contract with Keller Industries. The contract was executed on February 19 and provided for a graduated wage increase exactly as had been promised by the organizer.

The *modus operandi* used in organizing the ladder plant in March did not vary in essential detail from that used in the chair plant. Within less than two weeks, on April 9, 1965, a contract was executed in Miami with Local 666.

■ The right which the Board has sought to protect here is that of guaranteeing complete and unhampered freedom of choice to the employees in their selection of a bargaining representative, either for or against the proposition or as between competing unions. Cf. NLRB v. Link-Belt Company, 1941, 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368. The rights involved are not mere private rights but rights springing from " * * * a clear legislative policy to free the collective bargaining process from all taint of an employer's compulsion, domination, or influence." International Association of Machinists, etc. v. NLRB, 1940, 311 U.S. 72, 80, 61 S.Ct. 83, 85 L.Ed. 50.

■ This right, on the other hand, as valuable as it is, must be considered in the context of the policy of the Act which fosters cooperation between employers, employees and labor organizations. This policy necessarily envisions a balance to the extent that the rights of all are recognized and safeguarded to the maximum degree possible. So long as the acts of cooperation do not interfere with the freedom of choice of the employees, there is no violation of the Act. Cf. NLRB v. Valentine Sugars, Inc., 5 Cir., 1954, 211 F.2d 317; Coppus Engineering Corporation v. NLRB, 1 Cir., 1957, 240 F.2d 564; Kimbrell v. NLRB, 4 Cir., 1961, 290 F.2d 799; Federal-Mogul Corp. v. NLRB, 6 Cir., 1968, 394 F.2d 915; Modern Plastics Corporation v. NLRB, 6 Cir., 1967, 379 F.2d 201; Chicago Rawhide Manufacturing Company v. NLRB, 7 Cir., 1955, 221 F.2d 165.

■ We reiterate our support of the sound doctrine that cooperation between management and labor is to be encouraged. The assistance afforded Local 666 by the employers here came in the form of close cooperation. Unfortunately, however, and this is the tenor of the Board's holding, it went beyond legally protected cooperation over into the proscribed domain of interference with the freedom of choice of the employees.

■ The vice in the cooperative relationship between Respondent-employers and Local 666 under the circumstances presented by this record was one of joining hands to the exclusion of the employees. Their § 7 right to organize or to refrain from organizing and in the selection of a bargaining representative was invaded by the joint effort of their employers and Local 666. Their fellow employees, assisting the organizer, had been designated without their knowledge by their employers for such duty. They were assembled on company premises by new employers. There was an atmosphere of haste. Their authorization cards were sought in an open meeting with no semblance of a secret vote. We cannot say that their freedom of choice was not to some extent thus inhibited through the action of their employers.

We can see circumstances where management will be less resistant to a union which already has another or other of its plants organized. This is an example of cooperation but there is a line between cooperation and a situation where, as here, a fair inference may be and was drawn that the company and the union are working together and that the employees are not in possession of all of the facts but were rushed, on company time and under company auspices, into the arms of the union. This oversteps the line.

The order, the gist of which is simply to withdraw and withhold recognition from Local 666 until it shall have demonstrated its exclusive representative status pursuant to an election conducted by the Board, will be enforced.

Enforced.