**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**VERNITRON ELECTRICAL COMPO-NENTS, INC., BEAU PRODUCTS DIVISION, Respondent.**

No. 76–1172.

United States Court of Appeals, First Circuit.

Argued Oct. 7, 1976.

Decided Jan. 21, 1977.

David S. Fishback, Atty., Washington, D. C., with whom John S. Irving, Jr., Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate

Gen. Counsel, and Alan S. Hyde, Atty., Washington, D. C., were on brief, for petitioner.

D. David Cohen, Great Neck, N. Y., with whom Jason Berger, Boston, Mass., was on brief, for respondent.

Before COFFIN, Chief Judge, ALDRICH and McENTEE, Circuit Judges.

McENTEE, Circuit Judge.

In this case the National Labor Relations Board petitions for enforcement of various orders against respondent, Vernitron Electrical Components, Inc. The Board found that respondent had violated § 8(a)(2) of the National Labor Relations Act, 29 U.S.C. § 158(a)(2), which provides that it is an unfair labor practice for an employer "to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it." On the same facts the Board also ruled that Vernitron had violated § 8(a)(1), 29 U.S.C. § 158(a)(1), which forbids an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section [7]." The Board ordered Vernitron, *inter alia*, to withdraw its recognition of the allegedly illegally assisted union, Warehouse Employees Local 210, and to reimburse employees for all union dues exacted pursuant to the collective bargaining agreement between Local 210 and Vernitron. Respondent challenges the Board's finding that it violated § 8(a)(1) and (2) and the propriety of its order requiring that all employees be reimbursed.

Under § 10(e), 29 U.S.C. § 160(e), "[t]he findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." *See also Coppus Engineering Corp. v. NLRB*, 240 F.2d 564, 570 (1st Cir. 1957). Having reviewed the record, we think that the evidence supports the following findings of the Board perti-

nent to the alleged violations of § 8(a)(1) and (2): [1]

"This case concerns Respondent's Laconia, New Hampshire, plant . . . . . On September 7, 1973, Respondent's president was informed by his corporate headquarters in New York that two representatives of Local 210 would be in Laconia on September 10 to organize the plant and was told to treat them courteously.

"On September 10 Respondent's supervisors were told to, and did, assemble their employees, by departments, for meetings with the union organizers."

"The series of organization meetings lasted the entire day, employees were directed to attend them, and all were paid for the time involved. . . . Supervisors, including Respondent's general foreman, were present for all or part of each meeting. None of them spoke, but all were in a position to observe the employees while the latter were executing their authorization cards. By the end of the meetings, Local 210 had secured authorizations from 101 of Respondent's 125 employees and Respondent—after inspecting the cards—granted recognition the very same day."

Shortly thereafter, the Board found, Vernitron entered into a collective bargaining agreement with the union.

On the basis of these facts, the Board concluded that

"the above-noted combination of employer-applied pressures, both direct and indirect, with the instantaneous and unverified grant of recognition to the Union, reasonably tends to coerce employees in the exercise of their free choice in selecting a bargaining representative. Accordingly, we find that Respondent provided unlawful assistance to Local 210 in violation of Section 8(a)(2) and (1) of the Act."

Respondent challenges this conclusion on various grounds. However, we need not review Vernitron's multi-faceted argument

---

1. In the interests of clarity and economy we have omitted mention of a number of findings of the Board which, though arguably relevant

to violations of § 8(a)(1) and (2), were not expressly relied on by the Board in finding violations.

in detail.[2] Respondent's argument fails largely because it would have us focus on each factual finding in isolation as insufficient to support a conclusion of unlawful assistance. The Board's conclusion was based on a series of events, however, which must be considered together and in context.

Our task in this case is to determine whether Vernitron's conduct "went beyond legally protected cooperation over into the proscribed domain of interference with the freedom of choice of the employees." *NLRB v. Keller Ladders Southern, Inc.*, 405 F.2d 663, 667 (5th Cir. 1968). While the cases in this area leave the location of the boundary somewhat in doubt, *see Longchamps, Inc.*, 205 N.L.R.B. 1025, 1026 (1973) (Chairman Miller dissenting), several guiding principles are evident to us. The Board need not find that the employer intended unlawfully to aid the union. *ILGWU v. NLRB (Bernhard-Altmann Texas Corp.)*, 366 U.S. 731, 739, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961). Nor is it necessary for the Board to probe for the employees' subjective reaction to the employer's support of the union. The Board may base a finding of unlawful assistance upon the tendency of the employer's assistance to coerce employees in the exercise of their organizational rights. *NLRB v. Link-Belt Co.*, 311 U.S. 584, 588, 61 S.Ct. 358, 85 L.Ed. 368 (1941); *Sheraton-Kauai Corp. v. NLRB*, 429 F.2d 1352, 1357 (9th Cir. 1970).

Turning to the factual circumstances which may give rise to a permissible inference of unlawful support, we think that the supplying by an employer of facilities for an organizational meeting and release of employees from work, standing alone, would not violate § 8(a)(1) or (2). *See Coppus Engineering Corp. v. NLRB, supra* at 573; *Longchamps, Inc., supra* at 1026 (Chairman Miller dissenting). Hasty recog-

nition alone would also not suffice to support a finding of a violation. *Coppus Engineering Corp. v. NLRB, supra* at 571. In this case, however, the confluence of various actions by the employer is sufficient to support the Board's conclusion that Vernitron violated § 8(a)(1) and (2).

First, we think that the Board could reasonably find that the employer's shepherding of employees, department by department, to the union organizational meetings would create in the employees' minds an impression of employer support for the union and a sense of pressure in support of the union. The employer's payment of the employees' wages during the meetings could only have reinforced these feelings. And, the Board also could find that the presence of supervisors at the meetings in positions where they could monitor the employees' execution of authorization cards coerced employees into supporting the union. *Compare NLRB v. Keller Ladders Southern, Inc., supra, with Coamo Knitting Mills*, 150 N.L.R.B. 579, 581 (1964). Finally, we think that the Board could legitimately conclude that the employer's speedy recognition of the union occurred at a time when the majority signing cards was coerced, and that this recognition "locked in" majority support which otherwise might have eroded after the employer-assisted organizing ceased. The Board thus legitimately found a violation of § 8(a)(1) and (2).

Vernitron next argues that if we sustain the Board's conclusion that the company violated § 8(a)(1) and (2), we should not enforce its order that the company reimburse employees for all union dues checked off pursuant to the collective bargaining agreement. In reviewing the remedies ordered by the Board we are constrained to give considerable deference to the Board's discretion. *NLRB v. Seven-Up*

---

2. Some of Vernitron's arguments are plainly irrelevant. For example, the Board's conclusion rested entirely on the conduct of the employer in supporting Local 210's organizing efforts. Hence, we fail to see the relevance of Vernitron's reliance on § 8(c)'s protection of an employer's right to non-coercive verbal communications concerning unionism. Vernitron

is also clearly wrong in asserting that a finding of scienter is a necessary component of employer liability for assistance to a union in violation of § 8(a)(1) and (2). *See ILGWU v. NLRB (Bernhard-Altmann Texas Corp.)*, 366 U.S. 731, 739, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961).

*Bottling Co.*, 344 U.S. 344, 349, 73 S.Ct. 287, 97 L.Ed. 377 (1952). "But the power of the Board 'to command affirmative action is remedial, not punitive, and is to be exercised in aid of the Board's authority to restrain violations and as a means of removing or avoiding the consequences of violation where those consequences are of a kind to thwart the purposes of the Act.'" *Carpenters Local 60 v. NLRB*, 365 U.S. 651, 655, 81 S.Ct. 875, 876, 6 L.Ed.2d 1 (1961), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 236, 59 S.Ct. 206, 83 L.Ed. 126 (1938). It is necessary, therefore, that a causal relationship exist between Vernitron's unfair labor practice and the payment of dues. *See Carpenters Local 60 v. NLRB, supra*, 365 U.S. at 654–55, 81 S.Ct. 875. Here the employer checked off dues under a collective bargaining agreement which it entered into with a union which did not represent an uncoerced majority of the employees. We think that the dues check-off may be viewed as coerced or caused by the employer's unfair labor practice. In order to restore the coerced employees to the status quo ante, the Board has ordered the company to cease bargaining with the union and to give no further effect to the contract. We think that it was also permissible for the Board to extirpate the effects of the illegal employer assistance to the union by ordering reimbursement of dues which had been exacted under the union security clause of the collective bargaining agreement. *Komatz Construction, Inc. v. NLRB*, 458 F.2d 317, 323 (8th Cir. 1972); *NLRB v. American Beef Packers, Inc.*, 438 F.2d 331, 333 (10th Cir.), *cert. denied*, 403 U.S. 919, 91 S.Ct. 2232, 29 L.Ed.2d 691 (1971).

In sustaining the Board's order we are mindful that employees may have benefited financially from the union's representation. This fact, however, does not require the Board to order less than full reimbursement of dues. *Virginia Electric & Power Co. v. NLRB*, 319 U.S. 533, 543–44, 63 S.Ct. 1214, 87 L.Ed. 1568 (1943); *NLRB v. Drivers Local 886*, 264 F.2d 21, 23 (10th Cir. 1959); *NLRB v. Teamsters Local 404*, 205 F.2d 99, 104 (1st Cir. 1953). Nor was it necessary for the Board to determine which employees were uncoerced in their support of the union and to permit Vernitron to abstain from reimbursing them. The Board's reimbursement order may rest on substantial evidence that the majority supporting the union had been coerced. *See NLRB v. Forest City/Dillon-Tecon Pacific*, 522 F.2d 1107, 1110 n.2 (9th Cir. 1975); *NLRB v. Cadillac Wire Corp.*, 290 F.2d 261, 263 (2d Cir. 1961); *NLRB v. Revere Metal Art Co.*, 280 F.2d 96, 101 (2d Cir.), *cert. denied*, 364 U.S. 894, 81 S.Ct. 225, 5 L.Ed.2d 189 (1960).

Where both the union and employer are respondents, equity may require the Board to apportion the burden of dues reimbursement according to degree of fault, *see NLRB v. Revere Metal Art Co., supra*, 280 F.2d at 101, or at least to provide for joint and several liability, *see Local 1424, IAM v. NLRB*, 105 U.S.App.D.C. 102, 264 F.2d 575, 582 (1959), *rev'd on other grounds*, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960); *NLRB v. Broderick Wood Products Co.*, 261 F.2d 548, 558–59 (10th Cir. 1958). *See also Komatz Construction, Inc. v. NLRB, supra* at 325. Here, however, the union was not named as a respondent in the charge filed with the NLRB and the Board correctly notes that it is without power to add the union as a respondent. *Radio Officers' Union v. NLRB*, 347 U.S. 17, 54, 74 S.Ct. 323, 98 L.Ed. 455 (1954); *NLRB v. Operating Engineers Local 57*, 201 F.2d 771, 774 (1st Cir. 1953). Though it might be more equitable to require the union to bear some portion of the reimbursement costs, the unavailability of the union as a respondent does not render unenforceable the Board's order that the sole respondent, Vernitron, bear the full cost of remedying the unfair labor practice. *Radio Officers' Union v. NLRB, supra.*

*The order of the Board will be enforced in all aspects.*