May 9, 1977

## 77-25 MEMORANDUM OPINION FOR THE GENERAL COUNSEL, DEPARTMENT OF DEFENSE

### Status of Baggers as Federal Employees—Fair Labor Standards Act

This is in response to the request of the General Counsel concerning a disagreement between the Department of Defense (DOD) and the Civil Service Commission (CSC) regarding the interpretation of the Fair Labor Standards Act of 1938 (FLSA), as amended in 1974, 29 U.S.C. §§ 201 *et seq.* The CSC has determined that individuals who, with the permission of the commissary, bag and transport DOD commissary patrons' purchases in return for tips ("baggers") are employees within the scope of the FLSA. It is DOD's view that this interpretation "conflicts with statutory and traditional concepts of Federal employment." For the reasons that follow, we conclude that such concepts are not controlling under the FLSA and that CSC's application of the "economic realities" test[1] to determine questions of employment, even in the Federal sector, is proper.

### I

DOD's main objection to CSC's determination lies in its resort to the "economic realities" test in determining whether an individual is an employee for purposes of the FLSA, and the view that the statute "expressly excepted from the general definition of 'employees' " individuals employed by the U.S. Government. This line of reasoning, it is argued, renders the "economic realities" standard inoperative as a test of Federal employment. It is further contended that the coverage of the FLSA is restricted to those who conform to the statutory criteria of Federal employment set forth in 5 U.S.C. § 2105.

---

[1] The "economic realities" test, as generally applied by the courts, simply refers to an analysis of a controverted employment situation based not on isolated factors but rather "upon the circumstances of the whole activity." *Rutherford Food Corp.* v. *McComb,* 331 U.S. 722, 730 (1947).

We cannot agree that the statutory framework here leads to such conclusion. The pertinent parts of the FLSA definition of "employee" in 29 U.S.C. § 203(e) read as follows:

(1) Except as provided in paragraphs (2) and (3), the term "employee" means any individual employed by an employer.

(2) In the case of an individual employed by a public agency, such term means—

(A) any individual employed by the Government of the United States—

(i) as a civilian in the military departments (as defined in section 102 of Title 5),

(ii) in any executive agency (as defined in section 105 of such title),

(iii) in any unit of the legislative or judicial branch of the Government which has positions in the competitive service,

(iv) in a nonappropriated fund instrumentality under the jurisdiction of the Armed Forces, or

(v) in the Library of Congress.

It is clear that Federal employees are not deemed employees subject to the FLSA by virtue of the "general" definition of employee set forth in § 203(a)(1). It is not at all clear, however, how this fact gives rise to a conclusion that the "economic realities" test is to be inapplicable to all individuals working in the Federal sector. The "exception" in § 203(e)(1) does not purport to exclude Federal employees from the scope of the statute or create different standards as to them, but merely refers to § 203(e)(2). This latter provision, except for the kind of employer to which it relates, adheres strictly to the structure of the "general" definition in § 203(e)(1)—that is, the provision defines "employee" as "any individual employed by" the pertinent employer. Because the "economic realities" test applies to determine whether this requirement is [fulfilled with respect to the "general" definition, it would seem equally applicable to determine whether this same requirement is] satisfied with respect to the question of the FLSA's coverage in the Federal sector.

While the "economic realities" test may have been applicable only with respect to the "general" definition prior to the 1974 amendments, it does not follow that it should remain so limited today. The "general" definition was the only one in existence prior to 1974, and as such the "economic realities" standard was applicable in every case where the question of coverage under the definition of "employee" arose. Absent some contrary indication in the amendments themselves or in their legislative history, we would expect that the same approach would hold true today in any case where the issue was whether an individual was an employee under the FLSA—whether the individual was associated with the Government or a private employer.

103

There is no such contrary indication here; in fact, all indications are that the "economic realities" test should be applied in the Federal sector and that formal criteria are not to be determinative. Most fundamentally, if Congress had intended that formal criteria were to prevail, it would have explicitly so stated. Instead, Congress chose a more expansive approach. An employee is defined by the FLSA as "any individual *employed* by the Government of the United States," 29 U.S.C. § 203(e)(2)(A). [Emphasis added.] In turn, the definition of "employ" "includes to suffer or permit to work." 29 U.S.C. § 203(g).[2] The use of this broadly defined term with reference to the Federal Government must thus mean that the Government could "employ" an individual even if formal statutory criteria were not met. All that need be done is that the Government "suffer or permit" that individual to work in one of the areas specified in § 203(e)(2)(A)(i)-(v).

The legislative history of the provisions at issue here bolsters this view. That history shows that Congress intended that coverage under the FLSA "should be interpreted broadly," S. Rep. No. 690, 93d Cong., 2d Sess. 56 (1974). Strict adherence to formal criteria of employment would hardly comport with this general mandate. More specifically, the legislative history is clear that the reason for extending the FLSA to Federal employees was to subject the Federal Government and private employers to the "same standards." *See* 120 Cong. Rec. 4702 (remarks of Senator Williams). While this expression of intent could be viewed as limited to the payment of similar minimum and overtime wages, we believe that Congress meant for the "same standard"—including the "economic realities" test with respect to the scope of the Act—to apply across the board. Any doubt about this point was resolved by the committee's statement:

> It is the intent of the Committee that the Commission will administer the provisions of the law in such a manner as to assure consistency with the meaning, *scope,* and *application* established by the rulings, regulations, interpretations, and opinions of the Secretary of Labor which are applicable in other sectors of the economy. S. Rep. No. 690, 93d Cong., 2d Sess. 23 (1974). [Emphasis added.] *See also* H.R. Rep. No. 913, 93d Cong., 2d Sess. 23 (1974).

The standards previously established by the Secretary of Labor with respect to the scope and application of the FLSA would, of course, include the "economic realities" approach. The above statement thus makes it quite clear that this same approach is to be applied to the

---

[2] Significantly, the Supreme Court had previously acknowledged the broad scope of the Act under such definitions:

In determining who are "employees" under the Act, common law employee categories or *employer-employee classifications under other statutes* are not of controlling significance . . . . This Act contains its own definitions, comprehensive enough to require its application to many persons and working relationships which, prior to this Act, were not deemed to fall within an employer-employee category. *Walling* v. *Portland Terminal Co.,* 330 U.S. 148, 150–51 (1947). [Emphasis added.]

question whether an individual working for the Federal Government is an employee under the FLSA.

Moreover, the suggested approach of resorting to 5 U.S.C § 2105 seems particularly inappropriate in this case. A resort to that section would ignore completely the definitions of Government employees set forth in the FLSA itself. It seems clear that the coverage of the FLSA must be determined by reference to the definitions contained within it, and not by criteria set forth in an unrelated title. Nothing is said to indicate that the FLSA definitions are not sufficient in themselves; and, more specifically, no reference is made to the definition set forth in 5 U.S.C. § 2105. In fact, Congress indicated its awareness of the relevance of several provisions of Title 5 by referring to them in § 203 itself (i.e., 5 U.S.C. §§ 102, 105). The absence of any similar reference to 5 U.S.C. § 2105 could suggest that Congress did not intend that provision to be applicable here.[3] We believe that to resort to 5 U.S.C. § 2105 would disregard the definitions that Congress carefully framed for purposes of the FLSA and made determinative a set of criteria that Congress gave no indication were to be relevant.[4]

## II

The DOD also points out that, if baggers are regarded as employees within the FLSA, problems arise with respect to other statutes—for example, the conflict-of-interest laws, 18 U.S.C. §§ 201 et seq., and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. We do not believe that CSC's conclusion here is determinative of the question whether a bagger is an employee for purposes of these other provisions. The problems adverted to, therefore, may not exist. Even if problems arise, it will not be due to CSC's determination with respect to the FLSA, but rather by reason of the language of these other provisions and Congress' purpose in enacting them.

The DOD might argue that Congress' failure to provide for baggers in some respects—such as appropriations or manpower ceilings—indicates that Congress did not intend to allow baggers to be paid out of Federal funds and, therefore, by implication, did not intend that baggers be regarded as employees within the FLSA. We think, however,

---

[3] Nor is there any indication in 5 U.S.C. § 2105 to the contrary. By its own terms, that provision exists "for the purpose of this title"; the legislative history also indicates that the section is designed only for the purposes of Title 5. See S. Rep. No. 1380, 89th Cong., 2d Sess. 47 (1966).

[4] In fact, if 5 U.S.C. § 2105 were to be determinative here, it would not only ignore but also completely nullify some of the provisions explicity set forth in § 203. For example, § 203 includes those employed "in a nonappropriated fund instrumentality under the jurisdiction of the Armed Forces." 29 U.S.C. § 203(e)(2)(A)(iv). A resort to the standards of 5 U.S.C. § 2105, however, would exclude from the definition of employee (for purposes of laws administered by the CSC) "an employee paid from nonappropriated funds" of military exchanges and other instrumentalities of the United States under the jurisdiction of the Armed Forces. 5 U.S.C. § 2105(c). We cannot believe that Congress meant, on the one hand, to set forth certain criteria and, on the other, intended that a mandated resort to another statutory provision would abrogate those criteria.

that this argument reads too much into Congress' silence. In view of the broad language of the FLSA and Congress' aims underlying it, it is our opinion that, in order for other provisions of law to create an exception, they must do so specifically and clearly. *Morton* v. *Mancari,* 417 U.S. 535, 551 (1974). We therefore conclude that possible inconsistency with appropriation authorization cannot be deemed to create an exception to the usual standards by which the FLSA is to be applied.[5]

### III

The DOD also argues that, even if the "economic realities" test does apply, the most important factor to be considered is whether the individual involved has met the formalities required by statute. If this is meant to imply that the statutory criteria of Title 5 are to be determinative, it is merely a restatement of your primary argument and must fail for the reasons discussed above.

Moreover, we doubt whether it is even proper to regard a failure to satisfy statutory criteria as of great, rather than controlling, importance. The courts have made clear that the test of an employment relationship is not to depend on technical or isolated factors, but rather "upon the circumstances of the whole activity." *Rutherford Food Corp.* v. *McComb, supra,* at 730; *Goldberg* v. *Whitaker House Cooperative, Inc.,* 366 U.S. 28, 33 (1961); *Hodgson* v. *Griffin and Brand of McAllen, Inc.,* 471 F. 2d 235, 237 (5th Cir. 1973). Thus CSC might quite properly accord more weight to other factors more indicative of the economic realities of the situation.

We do not read your request for our opinion as asking for our views generally as to CSC's application of the "economic realities" test to the facts of this particular case. Nor do we believe that such as assessment is within our province, because such determinations are lodged by law in the Commission. 29 U.S.C. 204(f). Additionally, insofar as the application of the "economic realities" test involves an examination of all the relevant facts and circumstances, we think that the Commission is better suited than this Office to make such a determination. In fact, to

---

[5] The fact that Congress has directed DOD to reduce commissary personnel and the cost of commissary operations, is not so specifically or explicitly addressed to the situation here as to allow for an exception to Congress' expansive approach in the 1974 amendments. Rather, the mandate to cut costs must be viewed in light of the usual rule that congressional enactments are to be read in harmony, *see, Morton* v. *Mancari, supra,* and we thus believe that this directive must be applied within the constraints imposed by other congressional enactments.

the extent that such an evaluation is a mixed question of law and fact,[6] it is beyond the authority of this Office. 28 U.S.C. § 512. *See* 20 Op. A.G. 240, 242 (1891); 20 Op. A.G. 711 (1894); 19 Op. A.G. 676 (1890).

The decision to apply the FLSA concept of employment to the Federal sector was made by Congress, and in our opinion any other view would depart from the broad language of the statute and Congress' underlying purpose. We accordingly conclude that the criteria of Title 5 are not controlling and that CSC's application of the "economic realities" test to determine the question of the applicability of the FLSA in the Federal sector is proper.

JOHN M. HARMON
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[6] While the courts have adopted different approaches to this problem, *compare, Walling* v. *General Industries Co.,* 330 U.S. 545, 550 (1947), *Wirtz* v. *Lone Star Steel Company,* 405 F. 2d 663, 669–70 (5th Cir. 1968) (applying the clearly erroneous rule to a question involving the application of the FLSA), *with Rutherford Food Corp.* v. *McComb, supra, Shultz* v. *Hinojasa,* 432 F. 2d 259, 264 (5th Cir. 1970) (regarding the question of FLSA coverage as one of law), the question here, involving the application of a standard to all the circumstances of a given situation, presents a mixed question of law and fact. This appears particularly true where, as here, inferences that are drawn from the facts and are factors in the ultimate determination are subject to conflicting interpretations; your Department's and the Commission's differences on the question of supervision or control are one such example.