[No. 32352.  Department Two.  July 17, 1953.]

GEORGE KAHIN *et al.*, *Plaintiffs*, v. HARRY LEWIS *et al.*,
*Respondents*, LAKE CITY CATERING CO., INC.,
*Appellant.*[1]

*Fred T. Smart* and *Kelley, O'Sullivan & Myers*, for appellant.

*Robbins & Robbins* and *Ralph E. Franklin*, for respondents.

DONWORTH, J.—This action was instituted by plaintiffs pursuant to the uniform declaratory judgment act, RCW 7.24.010 to 7.24.140 [*cf.* Rem. Rev. Stat. (Sup.) §§ 784-1 to

[1]Reported in 259 P. (2d) 420.

784-15], inclusive, seeking adjudication as to their rights and status arising out of a certain ninety-nine year lease. Defendants were the lessees and their assignee.

The lessees entered a general denial. The assignee admitted nearly all the allegations of plaintiffs' complaint and cross-complained against the lessees for an adjudication of its rights and status under an agreement for assignment of the lease. The lessees answered the cross-complaint denying certain allegations and asserting two affirmative defenses to which the assignee replied. The lessees by trial amendment added a third affirmative defense to their answer asking that the cross-complaint be dismissed because no justiciable controversy existed.

The trial court heard evidence on the issues tendered by the original complaint and entered findings of fact, conclusions of law, and a judgment declaring the rights of plaintiffs and both defendants under the lease with respect to the option price hereinafter mentioned. In the same judgment, the court dismissed the assignee's cross-complaint against the lessees without prejudice. From the portion of this judgment dismissing the cross-complaint this appeal was taken by the assignee.

The facts alleged in the cross-complaint may be summarized as follows: Plaintiffs George Kahin and Orlo Kellogg leased certain premises to Harry Lewis and his wife (respondents) for a ninety-nine year term commencing August 30, 1947. Under the terms of the lease, respondents were required to complete the construction of a building on the property within thirty months at a cost of at least forty thousand dollars. The construction cost was to be computed under a formula contained in paragraph 4 (b) of the lease which read:

" . . . such cost to be the building contractor's cost of labor and materials plus ten percent, together with architect's fees of not over six percent."

The lease further provided that, within three months after the substantial completion of the building, respondents were to notify plaintiffs of the actual cost of construc-

tion thereof, and, in the absence of such notification, it was to be assumed for the purpose of fixing the option price hereinafter mentioned that the construction cost was not more than forty thousand dollars.

By the terms of the lease, plaintiffs retained an option to terminate the lease and retake the premises and improvements at the end of the tenth year of the term and for one year thereafter (i. e., at any time between August 30, 1957, and August 30, 1958). In the event that plaintiffs should elect to exercise this option during the specified period, the option price was to be ascertained by multiplying by two the actual cost of the building computed in accordance with paragraph 4 (b) of the lease less depreciation thereon from date of substantial completion at the rate of three per cent per annum. The building was erected and substantially completed on April 3, 1950.

Respondents on June 29, 1950, caused a written statement to be delivered to plaintiffs purporting to show that the total cost of constructing the building was $66,795.98. Plaintiffs promptly objected to several items in the statement on the ground that they were not properly includible in computing the option price. Plaintiffs contended that respondents had not shown the actual construction costs (computed according to the lease) to be more than $43,708.55.

On July 3, 1950, respondents agreed in writing to assign to appellant their leasehold interest and rights as lessee under the lease. This instrument contained the following provision:

"IV. Harry Lewis, and Elizabeth Lewis, his wife, warrant that the construction costs of the improvements on the premises covered by said ninety-nine year lease were $60,-000 more or less."

Pursuant to this agreement and relying on the quoted statement, appellant accepted the assignment of the lease on July 7, 1950.

Paragraph VI of appellant's cross-complaint alleged:

"This defendant contends:

"a) That said warranty relates to the costs of construc-

tion computed in accordance with paragraph 4 (b) of said lease;

"b) That it warrants to this defendant a basis of '$60,-000.00 more or less', or more specifically the amount of $66,795.98, the amount of said costs as actually submitted by defendant, Harry Lewis, from which could be computed the price payable to it under the option of termination contained in paragraph 16 of the lease; and

"c) That consequently if said price be declared to be any less than twice the difference between $66,795.98 and a sum equal to 3% thereof per annum from April 3, 1950, until the exercise of said option, the warranty would make the defendants, Harry Lewis and wife, liable to this defendant's for the amount of its damage by reason thereof.

"On the contrary, the defendants Harry Lewis and wife, categorically dispute and oppose these contentions, by reason of which an actual controversy affecting the substantial rights of the parties exists between them."

The relief prayed for as to respondents was:

"2. In the event the court finds the construction cost of said improvement, computed in accordance with Paragraph 4 (b) of the lease, to have been less than the $66,795.98 claimed by defendants Harry Lewis and wife, that the court further finds the warranty contained in paragraph 4 of the Agreement For Assignment Of Lease to be related to Paragraphs 4 (b) and 16 of the lease, and that the court declare the defendants, Harry Lewis and wife, to be liable to this defendant in such amount as it may be damaged by exercise of plaintiff's option at the lesser price."

The trial court in its conclusion of law No. 3 stated its ground for entering judgment dismissing appellant's cross-complaint against respondents as follows:

"(3) That the Cross-Complaint of the defendant, Lake City Catering Co., Inc., does not state facts showing a controversy properly determinable by a declaratory judgment."

The judgment declared the actual construction cost (computed in accordance with paragraph 4 (b) of the lease) to be the sum of $44,405.63, and that the option price to be paid by plaintiffs should be based thereon. No appeal having been taken from this portion of the judgment, this declaration is now final and binding upon respondents and appellant.

The sole question necessary to a determination of this appeal is whether the cross-complaint showed the existence of a justiciable controversy properly determinable by a declaratory judgment. If not, the judgment of dismissal must be affirmed.

This court has many times held that, in order to invoke the jurisdiction of the court under the declaratory judgment act, there must be an actual, existing justiciable controversy between parties having opposing interests, which interests must be direct and substantial and involve an actual, as distinguished from a possible, potential, or contingent dispute. *Washington Beauty College v. Huse*, 195 Wash. 160, 80 P. (2d) 403; *State v. Fruitland Irr. Dist.*, 196 Wash. 11, 81 P. (2d) 844; *Adams v. Walla Walla*, 196 Wash. 268, 82 P. (2d) 584; *Brehm v. Retail Food & Drug Clerks Union*, 4 Wn. (2d) 98, 102 P. (2d) 685; *Conaway v. Time Oil Co.*, 34 Wn. (2d) 884, 210 P. (2d) 1012.

We are of the opinion that appellant's cross-complaint against respondents failed to show the existence of a justiciable controversy. Whether the above-quoted warranty in the agreement for assignment dated July 3, 1950, refers to such construction costs as are includible under paragraph 4 (b) of the lease or refers to total construction costs actually incurred by respondents will become important *only if* plaintiffs (over whom neither respondents nor appellant have any control) should elect to exercise their option to repurchase at some time during the period of one year subsequent to August 30, 1957. Whether they will so elect will depend on whether plaintiffs will then deem it to their advantage to repurchase the property at the option price in the light of the economic and financial conditions existing in 1957 and 1958. If plaintiffs should not elect to exercise their option, no controversy will ever arise between respondents and appellant concerning the warranty. The controversy, therefore, involves only a possible or potential dispute.

On the other hand, if plaintiffs should elect to exercise their option on the basis of the construction cost as fixed by the court, appellant will then have adequate rem-

edies at law against respondents by actions for breach of warranty or for misrepresentation. In such event the rule is that declaratory judgment actions are limited to situations where there is no adequate remedy at law. *Peoples Park & Amusement Ass'n v. Anrooney*, 200 Wash. 51, 93 P. (2d) 362; *Jacobsen v. King County Medical Service Corp.*, 23 Wn. (2d) 324, 160 P. (2d) 1019; *Hawk v. Mayer*, 36 Wn. (2d) 858, 220 P. (2d) 885.

In its brief, appellant bases its argument that there is a present controversy on the proposition that the saleability of the leasehold is adversely affected by the uncertainty as to the precise meaning of the warranty clause. We cannot see that a prospective purchaser of the leasehold would be concerned about the agreement of July 3, 1950. That is a matter between appellant and respondents. It constitutes no cloud on the possible future assignment of the leasehold. A prospective purchaser thereof would know exactly what he would receive if the lessors should exercise their option in 1957 or 1958.

Appellant makes the further argument that it has no adequate remedy at law either for breach of warranty, misrepresentation, or other redress because it would be difficult, if not impossible, to prove damages in a specific sum. It is true that no damages whatever may be proven at present because it cannot be known until 1957 or 1958 whether appellant will sustain any damage at all. But this does not indicate an absence of an adequate remedy at law available at that time if the option is exercised.

As we understand the prayer of appellant's cross-complaint, what it is seeking to do in this case is to obtain a judicial declaration now to the effect that respondents are liable to appellant "in such amount as it may be damaged by the exercise of plaintiff's option at the lesser price." If this means that appellant is asking a judgment now fixing the liability upon respondents and leaving the amount of appellant's damages to be ascertained in future litigation in the event the option is exercised by plaintiffs, we cannot conceive that such a declaratory judgment could properly be entered in this case. Both the question of liability and

the amount of damages should be determined in the same action. Since appellant admits that the amount of damages cannot be determined at this time, his whole action is premature.

For the above stated reasons we cannot say that the trial court abused its discretion in declining to entertain appellant's application for declaratory relief, and the judgment dismissing appellant's cross-complaint without prejudice is affirmed.

GRADY, C. J., SCHWELLENBACH, HAMLEY, and FINLEY, JJ., concur.