**HOTPOINT CO., a division of General Electric Company, a New York corporation, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 13151.

United States Court of Appeals Seventh Circuit.

May 5, 1961.

Theophil C. Kammholz, Chicago, Ill., Norbert E. Anderson, Chicago, Ill., Vincent A. Johnson, Chicago, Ill., Vedder; Price, Kaufman & Kammholz, Chicago, Ill., of counsel, for petitioner.

Marcel Mallet-Prevost, Asst. General Counsel, Melvin Pollack, Attorney, National Labor Relations Board, Washington, D. C., Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Abraham A. Dash, Attorneys, National Labor Relations Board, Washington, D. C., for respondent.

Before DUFFY, SCHNACKENBERG and MAJOR, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Hotpoint Co., a division of General Electric Company, a New York corporation, herein called the Company, asks us to review and set aside an order [1] of the National Labor Relations Board, issued against the Company, pursuant to § 10 (c) of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. The Board requests enforcement of its order.[2]

The proceeding before the Board was initiated by one Peter J. Kornewich, an employee, who states in his charge that there were 1500 workers employed at the plant involved.

The order directed the Company to cease and desist from assisting, dominating and contributing financial or other support to the Joint Shop Council, herein called Council, found by the Board to be an organization within the meaning of § 2(5) of the Act,[3] and from recognizing the Council as the representative of its

**1.** Entered August 24, 1960, 128 N.L.R.B. No. 96.

**2.** This court has jurisdiction of these proceedings because the alleged unfair labor practices occurred in Cook County, Illinois, where the Company manufactures electrical appliances.

**3.** 29 U.S.C.A. § 152(5).

employees for the purpose of dealing with the Company concerning grievances, labor disputes, wages, rates of pay, hours of employment, or other terms or conditions of employment. The Company was further directed to withdraw and withhold all recognition from and completely disestablish the Council or any successor thereto.[4]

The basic issue as posed by the Board is whether the Company has dominated, assisted and supported an organization of its employees in violation of § 8(a) (2) and (1) of the Act.[5]

The Council, the structure and operation of which is governed by bylaws, is an employee's representative organization which has existed in all the Company's Chicago-Cicero plants for over 30 years to consider and make recommendations to management on all questions of employee interest, including wages, hours and conditions of employment. According to the bylaws its object is to provide a medium for exchange of ideas and suggestions between employees and management, and give to each employee, through representatives in the Council, access to an impartial hearing on suggestions, requests or complaints he or she may wish to make.

The Council consists of employee-representatives elected from voting divisions consisting of approximately 100 employees each. All hourly-rated employees, except section leaders, who are supervisors, plant guards, tool and die makers and machinists, are automatically members of the Council and eligible to vote for their respective employee-representative. The employee-representatives elect from their numbers a chairman, a secretary and a sergeant-at-arms. If a representative by reason of departmental

change or resignation "is no longer able to maintain satisfactory contact with a portion of his constituents", the Council may conduct a special election to select a temporary representative. All voting is by secret ballot and is conducted by the employee-representatives. Employees do not pay fees and dues to the Council, although they are asked to contribute funds necessary for Council activities, and Council representatives and officers pay certain expenses from their own pockets.

The Council holds "solo" meetings on the second and fourth Wednesday of each month, at which time representatives discuss problems which have arisen in their respective divisions, and an agenda is prepared of matters to be presented at a joint meeting with management. Minutes are kept of items brought up for discussion and subsequently reproduced and distributed to Council representatives and posted on bulletin boards.

Joint meetings with management, presided over by a management representative and the Council chairman, are normally held at stated times, at which meetings matters of mutual interest are discussed along with those presented on the Council agenda. Minutes are kept of these meetings by a management representative, typed and duplicated for distribution to all Council representatives and management personnel. Meetings at the departmental level between members of management and Council representatives, described as "little joint meetings", are also conducted. Here problems of common interest are discussed, including employee complaints. If not there resolved, they may be brought to the full Council at a solo meeting or otherwise discussed with management by Council representatives.

---

4. The Trial Examiner dismissed the complaint insofar as it alleged that the Company permitted supervisors to participate in employees' departmental Council meetings and the Board purports to adopt such finding.

5. 29 U.S.C.A. § 158(a) which provides: "It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

"(2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support of it; * * *."

The chairman and the secretary of the Council spend substantially all their time in meeting with management and in the conduct of other Council business. Both, as well as Council representatives, suffer no loss of compensation for Council activities. The Company provides the Council with an "office" located near the cafeteria between two washrooms in plant 2; furniture consisting of four old chairs, an old wooden desk and a box; a telephone; some paper supplies; and printing, duplicating, and typing services.

Prior to May 1959, a number of informal methods were followed in handling employee problems and complaints. Council bylaws outline one procedure by which employee or Council representatives could process the grievance; however, both employees and Council representatives frequently bypassed these procedures and went directly to personnel in Labor Relations or to other management representatives to discuss their problems. No formal procedure for handling employee complaints was recognized. Effective May 18, 1959 the Company established a "Company Procedure for Hourly-Rated Personnel" to provide "a media for handling individual employee complaints" without replacing or taking away from "the present practices for considering and discussing group requests, complaints, and questions on Division policies and practices." By this new procedure an employee was permitted to present his complaint, "alone or in the company of an elected Representative for his area * * * to his Foreman or other immediate supervisor." The new procedure further provided that, if the complaint was not settled at this management level, the employee could carry his complaint successively to four higher levels, accompanied if he wished, by his representative and Council chairman.

The bylaws may be amended "by a vote of two-thirds of all employee representatives." In 1957, the Council voted to amend the bylaws and the Council secretary noted in the minutes of the solo Council meeting on January 9, 1957 that "Council awaits management's disposition of proposed changes in Shop Council Bylaws." The Council president further announced that the amendments "would be submitted for Management's approval."

Although no written contract has been executed reflecting the agreements reached between management and the Council, the minutes of joint meetings, published by the Company, are regarded as reflecting in writing the agreements reached.

On the basis of the foregoing facts, the Board, in agreement with the trial examiner, found that the Company, since October 17, 1958, within the six-month statutory period, dominated, assisted, and supported the Council, in violation of § 8(a) (2) and (1) of the Act.

We learned in oral argument that for upwards of 30 years there has been no industrial unrest or work stoppage at the Company's plant.

Kornewich, whose signing of a charge initiated the present proceeding, testified. Neither in the charge nor in his testimony did he claim that he individually was wronged as an employee of the Company. In general his testimony tended to conform to the facts hereinabove stated.

It is the Company's primary contention that the Board's finding of domination, assistance, and support of the Council in violation of § 8(a) (2) and (1) is unsupported by substantial evidence in the record considered as a whole and contrary to law.

However, the Board seeks to support its order by asserting that the domination of the Council is written into its bylaws, that management representatives vote with Council representatives in making up the Council agenda, that the Council may consider a matter presented by an employee only after it has been taken up with the foreman and, if necessary, discussed at departmental meetings and submitted to the superintendent, that the Council is "fettered" in its powers to "follow through" on its recommendations, that the Company has power to cause councilmen to lose their elected status by

reorganization or transfer, that an amendment of Council bylaws requires Company approval, that the bylaws give power to management to make amendments thereto insofar as they impose duties on departmental foremen, and that the Company in 1959 unilaterally issued a statement of complaint procedures which in effect amended the bylaws.

The Board also found that the internal administration and operation of the Council was dependent upon Company support in violation of 8(a) (2).

We find no merit in these contentions of the Board.

1. Having inspected the bylaws, we are of the opinion that they provide for the agenda to be made up at so-called "solo" meetings of the Council, and that such action is not participated in by management representatives.

2. As to the Board's argument that the Council may consider a matter presented by an employee only after it has been taken up with the employee's foreman, and, if necessary, discussed at departmental meetings and submitted to the departmental superintendent, we agree with petitioner that it is the intent of the bylaws that an employee's discussion of a problem with his foreman is permissive and desirable rather than necessary. In fact § 9 of the bylaws expressly provides:

> "Whenever any employee desires to present matters to the Council, he may submit them to his representative, or, in his absence, to the Secretary of the Council."

Moreover, it should not be overlooked that 29 U.S.C.A. § 159(a) provides:

> " * * * That any individual employee or a group of employees shall have the right at any time to present grievances to their employer * * ."

Moreover we believe that free discussions of grievances should be encouraged between an aggrieved employee and his superior. While the Council's bylaws recognize this fact, they in no way interfere with the Council's function to represent an aggrieved employee in presenting a matter to the Company.

3. To support its charge that the Council was "fettered" in its power to "follow through" on its recommendations, the Board asserts that the Council bylaws produced that result. In its decision, the Board sets forth §§ 8 and 9 thereof and in its brief herein asserts that § 9, which is entitled "Procedure", is applicable to matters of general as well as individual concern. It contends that "Thus, the procedure applies not only where the employee is dissatisfied with his foreman's decision, but also 'where the problem is not appropriate individually'."

The Company insists that § 8 is applicable because it provides "that the Council consider and make recommendations to management with respect to a wide variety of subjects and questions of concern to all employees, while Section 9 is primarily concerned with the procedure in processing problems of an individual nature."

These sections provide as follows:

"8. Duties and Powers.

"The Council shall consider and make recommendations on such subjects or questions as:

"a. Working Conditions

"b. Protection of Health

"c. Safety

"d. Wages

"e. Hours of Labor

"f. Recreation

"g. Education and Training

"h. Increasing Productivity and Quality

"i. Beneficiary Activities

"j. Seniority

"k. Other problems on which the recommendations of the Council may be of benefit to all concerned.

"When the policy of the Company as to any of these matters has been determined, execution of the policy shall remain with the management.

"It shall be the duty of the Chairman to follow up all Council items upon which a decision has been reached or which are under consideration and see that proper action is taken. Any results affecting the general employee group shall be reported to all Council representatives within a reasonable time.

"9. Procedure.

"Whenever any employee desires to present matters to the Council, he may submit them to his representative, or, in his absence, to the Secretary of the Council.

"The representative or Secretary shall first make sure the matter has been presented to the employee's foreman or superintendent, and if not, shall see that it is done promptly.

"It is desirable that the employee will submit his problem to the foreman individually; however, in those cases where the employee does not feel that the matter has been disposed of satisfactorily, or where the problem is not appropriate individually the following procedure is provided:

"a. The foreman will arrange with the Shop Council representative or representatives in his department, regularly scheduled meetings twice each month.

"b. The Shop Council representative and the foreman may at their discretion invite various members of the department concerned to participate in the business of the meeting.

"c. All matters that are not satisfactorily settled through these meetings will be brought jointly to the attention of the Plant Superintendent, and if not disposed of will subsequently be presented to the Secretary and Chairman of the Shop Coun-cil, with a statement of the case to be established as a Shop Council item.

"d. Bi-monthly reports of the progress made in these meetings will be made by the foreman to the Plant Superintendent, who will further discuss the matters with those concerned and the department heads concerned.

"If the matter cannot be disposed of satisfactorily in that manner, a statement of the case shall be presented to the Council at its next meeting to determine the merits of the subject for establishment as a Council item. In order that an item may be established as such, it must be supported by a majority vote of the Council members present.

"When the case has thus been discussed in the Joint Meeting by employee and management representatives, the Council may decide what its recommendations to the management shall be. Such recommendations shall then be presented by the Secretary of the Council to the Manager—Relations and Utilities Department for final decision and disposition by the management."

It will be noted that the first paragraph of § 9 effectually states the scope and subject matter of the section when it says "Whenever any employee desires to present matters to the Council, * *." The procedural steps set forth thereafter in § 9 for handling the matter (referred to as "his problem"), characterize the subject matter of § 9 as in the nature of an individual grievance.

On the other hand, § 8 is clearly a provision outlining the duties and powers of the Council in its field of general activities.

It is clear that, in operating under § 8, the Council in its broad field of considering working conditions, wages and other problems broadly affecting its membership, has placed upon its chairman a duty "to follow up all Council items upon

which a decision has been reached or which are under consideration *and see that proper action is taken"*. (Italics supplied.) § 8 authorizes any action which is not unlawful. The Council is "unfettered."

4. The Board contends that the Company's domination of the Council is shown by a provision of the bylaws for election of a temporary representative when, as a result of departmental changes, the Council feels that a representative is no longer able to maintain satisfactory contact with a portion of his constituents, as a result of the Company's exercising its power to remove a representative merely by transferring him to another department. This finding is based upon a conjectural fear, which is directly opposed to the assertion of the Board's General Counsel at the hearing before the Board which expressly disclaimed any such motive.

5. As to the Council bylaws, we find the evidence shows that the Council has at all times had an independent right to make and to amend its own bylaws, a right which has not been affected by one or two expressions of Council officers indicating a desire that the views of the Company be sought on two amendments in 1957. Although the record fails to show that the Company did express its views, the Council made the amendments contemplated.

6. Very little need be said of the Board's reasoning that there is evidence of domination in the fact that the 1957 amendment of the bylaws permitted a foreman to participate with a Council representative in calling departmental meetings and permitted the foreman to submit reports of these meetings to his superintendent. Board witness Kucera testified that the "bylaws are not binding upon the foreman, and reference thereto * * * was only to communicate to foremen that the Council would like their participation in departmental meetings and make clear that, as far as the Council was concerned, the Council representative was responsible for calling departmental meetings." We find in these facts no substantial proof of domination.

7. Perhaps unfortunately for the Board's contention that the Company dominated the Council, it finally relies on the fact, *ante 4*, that the Company unilaterally issued a complaint procedure in 1959. In connection therewith the Company announced:

"This procedure is not intended to replace or take away from the present practices for considering and discussing group requests, complaints and questions on Division policies and practices."

Here is an expression of management which carries clear recognition of the independence of Council members in their use of the Council procedures for the presentation of grievances. Thus, the Company significantly refrained from questioning the Council's independence in regard to presentation of grievances.

8. As a matter of "background evidence" the Board adopted findings of the trial examiner that the Council has no funds, that the Company furnishes office space and telephone, etc., and that employees are paid their regular rate while engaged in Council business. The space referred to, according to the evidence, was a small area "between two washrooms furnished with an old wooden desk, four chairs, a box and a telephone."

9. In Chicago Rawhide Mfg. Co. v. National Labor Relations Board, 221 F. 2d 165, 167, we discussed the statutory provisions relied upon in the case at bar, § 8(a) (1) and 8(a) (2), and said:

" * * * These two Sections are designed to prevent the employer from having any influence (except by free speech) over unions or the employees' choice thereof. 'Support' is proscribed because, as a practical matter, it cannot be separated from influence. A line must be drawn, however, between support and cooperation. Support, even though innocent, can be identified because it con-

stitutes at least some degree of control or influence. Cooperation only assists the employees or their bargaining representative in carrying out their independent intention. If this line between cooperation and support is not recognized, the employer's fear of accusations of domination may defeat the principal purpose of the Act, which is cooperation between management and labor. In this case the Board seems to have confused cooperation by the Company with the employees through the Employees Committees with improper domination, interference and support. We think it clear that the cooperation of the Company did not interfere with, constrain, dominate or contribute illegal support to its employees or the Employees Committees."

To a situation factually not unlike that in the case at bar, we applied the following language, at page 168:

"All of the acts cited by the Board as unfair labor practices in this case actually show no more than either the Company's cooperation with, or the possibility for control of, the employee association. Neither mere cooperation, preference nor possibility of control constitute unfair labor practices; and the Board may not infer conduct that is violative of the Act from conduct that is not, unless there is a substantial basis, in fact or reason, for that inference. We can find no basis for the Board's step from those non-violative actions which have been proved to the unproved violative conduct which the Board has inferred."

In that case we referred to the employer permitting the employees to hold elections of committees on company premises, on company time, its permitting the posting of election notices on its bulletin boards, its permitting employees' committees to transact their business on company premises without deduction from compensation of committee members, and company-made contributions to the Recreation Committee which enhanced the prestige of the Employees' Committee. We held, at page 170, that these acts would

"* * * no more than evidence the presence of potential means for interference and support, a possibility that is always present to some degree in an employer-employee relationship. But, without evidence of the realization of that potential, they do not furnish a substantial factual basis for an unfair labor practice finding.

"The acts complained of show only laudable cooperation with the employees' organization, which represented a majority of the employees, rather than interference or support. Allowing the use of Company property, and even time, for employee meetings is not in itself an unfair labor practice. Wayside Press, Inc. v. N.L.R.B. 9 Cir., 206 F.2d 862. * * *

* * * * * *

"* * * The Company and the great majority of its employees are now, as they always have been, in complete accord as to the bargaining representative. We are not going to permit the destruction of a happy and cooperative employer-employee relationship when there is absolutely no evidence to support a finding of unfair labor practice."

In Coppus Engineering Corp. v. National Labor Relations Board, 1 Cir., 240 F.2d 564, the court followed the Chicago Rawhide holding and remarked, at page 573, that "The sections of the Act before us were 'not enacted to prohibit or penalize courteous and friendly, or even generous, actions on the part of employers.' * * * *"

For the reaons which we have stated, the order of the National Labor Relations Board issued on August 24, 1960 is set aside.

Order set aside.