[No. 48445–7.  En Banc.  April 7, 1983.]

THE STATE OF WASHINGTON, *on the Relation of Robert V. Graham, as Auditor, Appellant,* v. NORTHSHORE SCHOOL DISTRICT No. 417, ET AL, *Respondents.*

*Kenneth O. Eikenberry, Attorney General,* and *James K. Pharris, Marjorie R. Schaer,* and *Richard A. Heath, Assistants,* for appellant.

*Sandra Driscoll,* for respondent Northshore School District.

*Judith A. Lonnquist,* for respondent Washington Education Association.

*Norm Maleng, Prosecuting Attorney,* and *Sandra L. Cohen, Deputy,* for respondent Enumclaw School District.

DIMMICK, J.—Declaratory judgment actions were brought by the State of Washington on relation of the State Auditor (Auditor) against four school districts, the local education associations representing the teachers in each respective district, the Washington Education Association (WEA) and two of its officers. The actions were originally brought in King and Snohomish Counties but by agreement of the parties the actions were consolidated for trial in King County. The suit challenged a practice known as "release time" whereby the school districts, as part of their collective bargaining agreements, agreed to allow officers and members of the local education associations to use a limited amount of schooltime for duties other than normal classroom duties, at the behest of the associations. The Auditor challenged the contract provisions as being (1) beyond the statutory authority of the school districts; (2) unfair labor practices; and (3) unconstitutional gift of public money (this challenge was withdrawn). The Public Employment Relations Commission (PERC) intervened challenging the court's authority to decide the unfair labor practice charge. The trial court determined it had jurisdiction to rule on the issue. The court then concluded that the contractual provisions were valid in the cases before it. The Auditor further asserted that service credits being accumulated toward retirement in the teachers' retirement system by Carol Jean Coe, a full–time officer of WEA named as a respondent in this action, are unauthorized. The court refused to reach this issue holding it was not a proper subject for declaratory judgment at this time. An appeal was taken to the Court of Appeals by the Auditor and PERC and the Court of Appeals certified the case to us. We affirm the trial court in all respects.

The issues presented on appeal, and our resolution of them, are as follows:

1. Did the school districts have statutory authority pursuant to RCW 28A.58.100 to contract for the release time provisions involved in the consolidated cases? We hold they did.

2. Did the trial court properly exercise declaratory judgment jurisdiction in ruling on an unfair labor practice charge when the question is also within the authority of PERC? We hold the trial court properly exercised jurisdiction in deciding this issue.

3. Do the provisions granting release time constitute an unfair labor practice pursuant to RCW 41.59.140? We answer this question in the negative.

4. Did the court properly refuse to decide the issue regarding the validity of Carol Jean Coe's accumulating service credits in the teachers' retirement system? We agree with the trial court that the issue is not a proper subject for declaratory judgment at this time.

The facts pertinent to each issue are set forth in the sections addressing the issues.

# I
## STATUTORY AUTHORITY FOR SCHOOL DISTRICTS TO AGREE TO RELEASE TIME

Two types of contract provisions granting release time are the subject of this dispute. The first is referred to as local president's leave. The collective bargaining agreements for the Mukilteo and Enumclaw School Districts provide for release time from normal classroom duties for the local education associations' presidents, without loss of salary or benefits. The trial court found that the Mukilteo president's leave was used

> for meetings with teachers, school administrators and other staff regarding collective bargaining, grievances, contract administration and other matters necessary to maintenance of harmonious employer–employee relations. In addition, during release time the Mukilteo Education Association President attended educational

conferences and workshops, worked on improving curriculum and methods of teaching, met with community groups and otherwise pursued matters in the interest of the educational program of the Mukilteo School District. Finding of fact 8. The Enumclaw president's leave was used for similar purposes. Finding of fact 15. These findings are not challenged on appeal.

The second type of release time in dispute is association leave. The collective bargaining agreement for the Mukilteo School District provided association leave of limited amounts of schooltime for employees designated by the local association. The agreement for the Lake Stevens School District provided for 5 days of paid association leave per year upon request of the local association president for such use as the education association deemed appropriate. The contract for Enumclaw School District also provided release time for designated association representatives. All these leaves were given without loss of salary or benefits and the employees taking leave prepared lesson plans and performed all necessary follow–up work. These leaves were used for the following purposes:

> Association leave for Mukilteo employees has been used for attendance at educational and legislative conferences and workshops, and other pursuits toward improvement of curriculum, teaching methodology and overall educational program.

Finding of fact 9.

> Lake Stevens employees who took Association leaves did so to attend the annual Representative Assembly of the Washington Education Association wherein issues of instructional development, curriculum, human relations, bilingual education and other educational issues throughout Washington public schools were discussed.

Finding of fact 12.

> The Enumclaw release time was used to allow educational employees to attend sessions of the legislature, to participate in grievance–arbitration proceedings, to attend workshops and conferences regarding collective bargaining, arbitration, local education association officer

training, legislative issues impacting education, and other topics related to either teaching or labor relations, and to allow an employee serving on the Washington Education Association Board of Directors to attend meetings of that body as well as meetings of local education associations which comprised the constituency for that Director position.

Finding of fact 15. These findings also are not challenged on appeal.

The local education associations reimbursed the districts either for the cost of a substitute for the released teacher, or the proportionate cost of the released teacher's salary.

We are not concerned with the wisdom or usefulness of these leave provisions. We are only concerned with determining whether the school districts are authorized to contract for such provisions. All parties agree that the answer is found in RCW 28A.58.100 which provides in pertinent part:

> Every board of directors, unless otherwise specially provided by law, shall:
>
> . . .
>
> (2) Adopt written policies granting leaves to persons under contracts of employment with the school district(s) in positions requiring either certification or noncertification qualifications, including but not limited to leaves for attendance at official or private institutes and conferences and sabbatical leaves for employees in positions requiring certification qualification, and leaves for illness, injury, bereavement and, emergencies for both certificated and noncertificated employees, and with such compensation as the board of directors prescribe . . .

The Auditor contends that the only purposes for which leaves may be granted are those specifically listed in the statute (conference attendance, sabbaticals, sick leaves, or compassionate and emergency leaves), or similar types. We do not agree with this restrictive interpretation. We read the statute as merely requiring that written policies be adopted for (a) attendance at institutes and conferences, (b) sabbaticals, and (c) illness, injury, bereavement and emergencies. Beyond the mandatory policies, the school

districts are given broad discretion to "transact all business necessary for maintaining school" and to "enter into such obligations as are authorized therefor by law." RCW 28A-.58.010. The Legislature specifically used the terms "including, but not limited to" prior to its listing types of paid leave and thus did not limit the discretion afforded school districts in contracting with its employees.[1] Obviously, as noted by the trial court, any leave agreed to must be consistent with operating a school district. In fact, the Auditor emphasizes that there is no objection whatsoever to release time for the conduct of association business "as is demonstrably related to school district functions." Brief of Auditor, at 15. He fears, however, that pursuant to the unlimited nature of the release time as granted in the contracts, the leaves will be used for purposes totally unrelated to the functions of school districts. The Auditor's parade of horribles simply has not occurred. As the trial court found in the unchallenged findings of fact set forth above and stated in its memorandum opinion:

> The uncontroverted evidence clearly shows that the various types of leave challenged in this case were used for the purpose of either (a) improving curriculum and methods of teaching, or (b) in the interest of providing a continuum of sound administration of the organization representing the teacher employees. The former is obvi-

---

[1]The Attorney General's office previously agreed with such statutory interpretation. In AGO 10, at 3–4 (1976), the Attorney General concluded:

"This statute <u>authorizes</u> a school board, in its discretion, to grant leaves of absence to its employees, above and beyond the minimum leaves for 'illness, injury and emergencies' <u>required</u> by its proviso, with such compensation as the board shall establish. Moreover, the discretionary authority thus granted is not limited to the types of leave thereafter enumerated because of the legislature's use of the phrase 'including but not limited to.' . . .

" . . .

" . . . Therefore it is our view of this statute that under its provisions neither the question of why a leave with pay is granted by a particular school district nor that of how an employee, certificated or otherwise, spends his time while on such a leave have been circumscribed by the legislature. Instead, both of those questions are to be resolved in each instance on the basis of whatever terms and conditions have been laid down by the particular district in its written policies governing discretionary employee leaves . . ."

ously in the interest of the educational program of the school district, just as much as leaves to attend conferences and institutes. The latter, to the extent it tends to promote harmonious employer–employee relations, is equally consistent with the business of operating a school district. Hardly anything at the present time is more important to the success of a school district's educational program than harmonious professional employee relations.

The basis for the trial court's ruling is inherently sound.

If in the future the school district perceives that release time is being abused (as the Auditor fears will happen), the remedy would lie in the collective bargaining process which is a continuum. The school district undoubtedly would come into the next round of bargaining, point to the examples of abuses, refuse to agree to the provisions now in the contracts, and suggest more limited provisions granting release time for the future.

## II
### Court's Jurisdiction To Address the Unfair Labor Practice Charge

The Auditor's complaint was brought pursuant to the Uniform Declaratory Judgments Act, RCW 7.24, specifically RCW 7.24.010:

> Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed.

The act is to be liberally construed and administered. RCW 7.24.120.

PERC relies upon the Educational Employment Relations Act, RCW 41.59, in arguing: (1) PERC has exclusive jurisdiction in deciding unfair labor practice charges and the court's only function is to review PERC's actions; or (2) if the court does have jurisdiction, the doctrine of primary jurisdiction requires the court to defer the matter to PERC due to its expertise in the area. PERC specifically cites to RCW 41.59.150(1) which provides:

The commission is empowered to prevent any person from engaging in any unfair labor practice as defined in RCW 41.59.140. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, equity or otherwise.

We do not agree with PERC's contention. Superior courts in Washington are courts of general jurisdiction "in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court". Const. art. 4, § 6. The Educational Employment Relations Act contains no language directly removing the jurisdiction of the superior courts over cases involving unfair labor practices or involving interpretation of RCW 41.59. The chapter in question merely establishes a system of collective bargaining, grants and defines certain rights of the parties in the collective bargaining agreements, and confers certain regulating and enforcement powers on PERC. In order to enforce its orders, PERC petitions the court. RCW 41.59.150(3). Naturally, PERC must define and interpret the language in RCW 41.59 in order to carry out its functions. Every administrative agency must interpret the law in order to enforce or to follow it. It is a quantum leap in logic, however, to jump from the fact that PERC is empowered to prevent unfair labor practices to the conclusion that PERC is the exclusive decider of public labor law questions.

The declaration of legal rights and interpretation of legal questions is the province of the courts and not of administrative agencies. PERC's arguments amount to no less than a suggestion that the Legislature has by implication carved out an area of law and assigned a traditional judicial function to an administrative body.

PERC further argues that the language of RCW 41.59-.150 specifically and directly ousts the court of jurisdiction here. PERC cites several United States Supreme Court decisions wherein the Court held that under 29 U.S.C. § 160 (1976) the state and various federal courts *must* defer

to the National Labor Relations Board (NLRB). *San Diego Bldg. Trades Coun. v. Garmon*, 359 U.S. 236, 245, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959). Although RCW 41.59.150 is worded identically to 29 U.S.C. § 160 (1976), we are by no means bound by the Court's interpretation of the latter statute. This is especially true since the primary concern of the Court in requiring courts to defer to the NLRB is to avert the danger of "state interference with national policy". *Garmon*, at 245. *See also Garner v. Teamsters Local 776*, 346 U.S. 485, 98 L. Ed. 228, 74 S. Ct. 161 (1953). Obviously, those are not concerns in our statutory scheme. Therefore, the federal cases cited by PERC are not persuasive in interpreting RCW 41.59.150.

▮ The additional cases cited by PERC merely call for judicial restraint in reviewing matters within the expertise of an agency. This leads us to PERC's second argument that the doctrine of primary jurisdiction requires the court to defer this case to PERC.

> "Primary jurisdiction," . . . applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*United States v. Western Pac. Ry.*, 352 U.S. 59, 63–64, 1 L. Ed. 2d 126, 77 S. Ct. 161 (1956). *See also Schmidt v. Old Union Stockyards Co.*, 58 Wn.2d 478, 364 P.2d 23 (1961); B. Schwartz, *Administrative Law* §§ 165–167 (1976).

The deference called for in the rule of primary jurisdiction requires that:

1. The administrative agency has the authority to resolve the issues . . .

2. The agency must have special competence over all or some part of the controversy which renders the agency better able than the court to resolve the issues . . . and

3. The claim before the court must involve issues that fall within the scope of a pervasive regulatory scheme so

that a danger exists that judicial action would conflict with the regulatory scheme.

*In re Real Estate Brokerage Antitrust Litig.*, 95 Wn.2d 297, 302–03, 622 P.2d 1185 (1980).

There were no factual disputes in this matter since the testimony was essentially uncontroverted and nearly all facts and documents were stipulated into the record. Consequently, the only question is interpretation of the applicable statute in order to determine whether an unfair labor practice existed under the facts. Interpretation of a statute is solely a question of law and within the conventional competence of the court. Therefore, resort to PERC is not necessary since it has no special competence over the controversy. This conclusion reflects a well recognized exception to the doctrine of primary jurisdiction. *See Great N. Ry. v. Merchants Elevator Co.*, 259 U.S. 285, 66 L. Ed. 943, 42 S. Ct. 477 (1922).

█ Further, the application of primary jurisdiction is within the sound discretion of the trial court (*In re Real Estate Brokerage Antitrust Litig.*, at 305). We hold that the trial court did not abuse its discretion in declining to apply the doctrine.

PERC contends that if we recognize the court's jurisdiction in deciding this issue, the entire statutory scheme will be upset. The bare fact that the court properly exercised its jurisdiction in this case does not necessarily mean that courts must accept jurisdiction over all actions involving unfair labor practices, no matter who brings them or under what circumstances.

█ PERC's final contention is that the Auditor is not a proper party to request relief under the Uniform Declaratory Judgments Act. RCW 7.24. RCW 7.24.020 provides that a "person interested under a . . . written contract" may bring a declaratory judgment action. In *Washington Beauty College, Inc. v. Huse*, 195 Wash. 160, 80 P.2d 403 (1938), we held that the interests of the person bringing the suit must be "direct and substantial" and "substantial interest" is not susceptible of a precise definition but must

be a matter of judicial determination in each particular case. PERC's theory is that only the parties to the contract would have standing to bring this action. If that were so, the parties could bargain for and agree to any conditions with total impunity from outside perusal. This cannot be the case where public monies are involved.

The Auditor clearly has sufficient interest in the school districts' contracts to bring this declaratory judgment action. This conclusion is based upon the Auditor's statutory duties to "examine into all financial affairs of every public office" and to inquire whether "the Constitution and laws of the state . . . have been properly complied with". RCW 43.09.260. This statute further provides the Attorney General shall institute necessary legal action if the Auditor's report discloses any malfeasance, misfeasance or nonfeasance.

## III
### Unfair Labor Practice Charge

RCW 41.59.140(1)(b) provides that it shall be an unfair labor practice

> To dominate or interfere with the formation or administration of any employee organization or contribute financial or other support to it . . .

The Auditor contends that the school districts in agreeing to allow release time for employees to use at the behest of the education associations "contributed" support to the employee organizations and thus violated the statute. (There is no contention of any dominance or interference.)

■■ We agree with the trial court's analysis that the general meaning of contribute is to give or grant something without obligation to do so. Such is not the case before us as the agreements were reached by arm's length bargaining. As stated by the trial court:

> If it were concluded otherwise, then every benefit or right received by an employee organization through a collective bargaining agreement with an employer, regardless of the consideration passing from the organization to the employer and regardless of how strenuously bargained

for, would be a "contribution" by the employer to the organization, and, if the effect thereof were to benefit or support the organization, it would be illegal.

Contribute is not defined in the statute, therefore it should be given its ordinary meaning. *Garrison v. Washington State Nursing Bd.*, 87 Wn.2d 195, 196, 550 P.2d 7 (1976). In ascertaining the common meaning of statutory terms we frequently resort to dictionaries. *See, e.g., Garrison; Intermediate Sch. Dist. 105 v. Yakima Cy.*, 81 Wn.2d 443, 445, 503 P.2d 104 (1972); *Crown Zellerbach Corp. v. State*, 53 Wn.2d 813, 815, 328 P.2d 884 (1958). *Webster's Third New International Dictionary* (1976), in part, defines contribute as follows: "to *give* or *grant* in common with others" or "*give* (money or other aid) for a specified object." (Italics ours.) *Accord,* Black's Law Dictionary 297 (5th rev. ed. 1979).

Accordingly, there is a gift concept inherent in the ordinary meaning of contribution. We have held that adequate consideration may preclude the finding of a gift and if intent to give a gift is lacking, the elements of a gift are not present. *Scott Paper Co. v. Anacortes*, 90 Wn.2d 19, 32–33, 578 P.2d 1292 (1978), and cases cited therein. No intent to give a gift is apparent. Release time was negotiated for and the Auditor has never asserted that consideration for said agreements did not flow to the school districts. Consequently, the school districts' agreeing to afford employees release time to engage in certain association business, while of undoubted benefit to the organization and employees, is not a contribution and thus is not proscribed by RCW 41.59.140(1)(b).[2]

---

[2]Due to our disposition of this issue we need not reach another question raised by the school districts and education associations. They assert that "contribution" must be read in the context of "dominate or interfere." That is, since the Auditor concedes there was no question about the school districts' attempting to dominate or interfere with the organizations by making the so-called contributions the agreements are valid. This argument is supported by at least one commentator. Note, *New Standards for Domination and Support Under Section 8(a)(2)*, 82 Yale L.J. 510, 529 n.125 (1973). It is also supportable under federal cases interpreting an identical provision in the National Labor Relations Act.

## IV
## RETIREMENT ISSUE

From 1975 to 1977 the Enumclaw School District contracted with one of its employees, W. R. Pickles, to grant him a leave of absence to serve as a full–time officer of the WEA. Mr. Pickles remained on the school district's payroll, receiving salary from the district for which the district was fully reimbursed by WEA. Reacting to the Auditor's concerns the school district in 1977 refused to continue Mr. Pickles' paid leave and placed him on unpaid leave. In 1979, Mr. Pickles resigned his teaching position to accept employment with WEA.

Beginning in 1975 the Northshore School District provided, through contract, similar paid leave arrangements for one of its certificated employees, WEA president Carol Jean Coe. Northshore paid Ms. Coe's salary fixed in an amount equal to the salary which the WEA had established for her services as a WEA officer. The amount of this salary and fringe benefits has been reimbursed to the school district by WEA. In addition, the contract provided that the periods of Ms. Coe's leave would be counted for tenure and seniority purposes and for her participation in the Washington State Teachers' Retirement System. Since 1978, the WEA has also reimbursed the State for the amount of the State's contribution to the retirement system, with respect to Ms. Coe's membership in that system.

The Auditor challenges the validity of Ms. Coe's contract. The Auditor contends that Ms. Coe's employment by the school district for the years during which she was under the special contractual relationship should not be counted as creditable service years for purposes of computing her

---

Those cases recognize a distinction between illegal support and legal, indeed desirable, cooperation by a company with a union. *See, e.g., Hertzka & Knowles v. NLRB*, 503 F.2d 625 (9th Cir. 1974); *NLRB v. Keller Ladders S., Inc.*, 405 F.2d 663 (5th Cir. 1968); *Hotpoint Co. v. NLRB*, 289 F.2d 683 (7th Cir. 1961); *NLRB v. Summers Fertilizer Co.*, 251 F.2d 514 (1st Cir. 1958); *Chicago Rawhide Mfg. Co. v. NLRB*, 221 F.2d 165 (7th Cir. 1955); R. Gorman, *Labor Law*, ch. 9, § 1, at 196 (1976).

entitlement to benefits under the teachers' retirement system.

The trial court declined to rule on this matter as not being the proper time or proper occasion to determine the question. We likewise decline to rule at this time.

It is well established that in order for the courts to entertain a declaratory judgment action there must be "*an actual as distinguished from a possible or potential dispute . . .*" (Italics ours.) *Washington Beauty College,* at 164–65. *See also State ex rel. O'Connell v. Dubuque,* 68 Wn.2d 553, 413 P.2d 972 (1966); *Kitsap Cy. v. Bremerton,* 46 Wn.2d 362, 369, 281 P.2d 841 (1955); *Kahin v. Lewis,* 42 Wn.2d 897, 901, 259 P.2d 420 (1953).

The dispute regarding Ms. Coe's retirement eligibility is at best speculative. This is in fact conceded by the Auditor.[3] It is apparent that this case involves a "possible or potential dispute" and the court will not entertain such a dispute in a declaratory judgment action.

The Auditor argues that courts decide other questions affecting the retirement eligibility of individuals, *e.g.,* hiring and firing. The effect those decisions have on retirement eligibility, however, is merely tangential. In this case the retirement eligibility of the individual is the primary issue and is presently too speculative for a decision.

---

[3] In his brief, at pages 32–33, the Auditor states:

It is true that defendant Coe may never seek to retire within the Washington State Teachers Retirement System. She may never meet the prerequisites for such retirement, or she may voluntarily choose to withdraw her contributions at some point before retirement. If she does retire, there is no way to tell now just what will be the final effect on Coe's pension of the contributions made on her behalf during her service as WEA President. Since Coe's WEA salary is higher than her earnings would have been had she remained as a teacher in Northshore School District, it seems likely that her WEA-based contributions to the teacher retirement system would have a significant eventual effect on her pension. But no one can say that for sure.

As pointed out by WEA in its brief the eventual effect of the contributions to Ms. Coe's pension is very speculative. It is equally conceivable, contends WEA, that given the inflationary trends and the inexorable increases in teachers' salaries, Ms. Coe's salary as a teacher in future years will be higher than her current earnings and thus the latter will have no effect whatsoever on Ms. Coe's pension.

To recapitulate, we affirm the trial court's assuming jurisdiction and determining that release time provisions in the collective bargaining agreements are valid under the applicable statute and under the facts of this case do not constitute unfair labor practices.

WILLIAMS, C.J., STAFFORD, DOLLIVER, DORE, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

UTTER, J. (concurring in part, dissenting in part)—I concur in the result reached by the majority but dissent from its analysis. I believe the majority construes RCW 43.09-.260, upon which it predicates the Auditor's standing, far too broadly. I would construe that provision more narrowly, limiting it to actions more closely related to the general duties of the Auditor, and conclude he has no standing here. Nonetheless, I agree that we should reach the labor law issue as it is one of substantial public interest.

I

While RCW 43.09.260 does impose upon the Auditor a duty to "examine into all financial affairs of every public office" to assure that state law has been complied with, this does not grant the Auditor general powers of law enforcement. The inquiry into compliance with state law is not independent of the examination into financial affairs but is merely one aspect of it. *See* RCW 43.09.260 ("*[o]n every such examination, inquiry shall be made . . . whether the* Constitution and laws of the state . . . have been properly complied with" (italics mine)). Moreover, RCW 43.09.260 must be read in the context of the rest of the act of which it is a part. *See Graham v. Washington State Bar Ass'n*, 86 Wn.2d 624, 627, 548 P.2d 310 (1976). The general duties of the Auditor, as set forth in RCW 43.09.050, are to audit and inspect public accounts, provide information to the Attorney General regarding the need to collect monies due the State, and provide information regarding the financial affairs of the State.

Read in this context, RCW 43.09.260 grants the Auditor

standing to redress violations of only those laws intended to assure the integrity of the public fisc or more generally govern the financial affairs of the State or its subdivisions. Actions may be brought only to correct "malfeasance, misfeasance, or nonfeasance in office on the part of any public officer or employee". RCW 43.09.260; *State v. Miller,* 32 Wn.2d 149, 152, 201 P.2d 136 (1948). The type of action permitted by RCW 43.09.260 is perhaps best exemplified by *State v. Miller, supra.* In that case, the Auditor brought an action to recover monies paid by a county clerk to his wife in violation of the conflict of interest statute governing public officers. *Miller,* at 150–51, 152–53. Since the law there involved was specifically intended to protect the integrity of the public fisc, the action was squarely within RCW 43.09.260. Similarly, the Auditor has standing in the case at bar to raise the issue of the school district's authority under RCW 28A.58.100, for the central purpose of that statute is to control the use of state funds by school districts to pay compensation.

RCW 43.09.260 does not give the Auditor standing, on the other hand, to enforce laws which are merely incidentally related to state finances. To hold otherwise, as the majority apparently does here, grants the Auditor almost unlimited enforcement powers, for almost every action by state officials has at least an incidental effect on government finances. For example, criminal prosecutions affect government finances. The majority's analysis, logically extended, would apparently grant the Auditor standing to bring an action to stop spending on prosecutions under any criminal law he claimed to be unconstitutional. Such a result cannot have been countenanced by the Legislature.

The case of *Berge v. Gorton,* 88 Wn.2d 756, 567 P.2d 187 (1977) also suggests a more narrow reading of RCW 43.09-.260 than that taken by the majority. In that case the plaintiffs based their action on a report by the Auditor which suggested that the State could recover monies paid out to private schools as tuition supplements under a law struck down as unconstitutional. *Berge,* at 758. Despite the

fact that the funds had been paid out pursuant to a law violating the state constitution, the court rejected the plaintiffs' claim that RCW 43.09.330, a statute analogous to RCW 43.09.260,[4] required the Attorney General to bring a reimbursement action. After noting that RCW 43.09.330 applies only if the Auditor's report discloses malfeasance, misfeasance, or nonfeasance, the court held it inapplicable on the ground that merely making payments pursuant to an unconstitutional law did not constitute such conduct. *Berge,* at 760–61.

The present case is analogous to *Berge.* The law which the Auditor alleges is being violated here, RCW 41.59-.140(1)(b), has nothing whatsoever to do with protecting the integrity of the public fisc. Instead, it is intended solely to protect the rights of public employees. *See* RCW 41.59-.010. Its effect on government finances is merely incidental. RCW 43.09.260 is therefore inapplicable.

To allow the Auditor to enforce RCW 41.59.140(1)(b) is especially perverse, for that provision is not intended to protect *any* state interest, let alone the type of interests envisioned by RCW 43.09.260. Domination of a union is an unfair labor practice by the *employer, i.e.,* by the State. *See* RCW 41.59.140(1)(b). Its purpose is to protect the rights of *employees,* not the interest of the State. Certainly RCW 43.09.260 is at least limited to actions necessary to protect some interest of the State. *See State v. Miller, supra* at 156. Such an interest is completely lacking here.

The Auditor's contention that no other person has any incentive to bring this action is a red herring. If any employee of the school district believes the alleged domination of the union is denying him or her effective and independent representation, he or she would have standing to bring an action. If no such employee exists, then the issue

---

[4]RCW 43.09.330 provides for postaudits by the Auditor and, just as does RCW 43.09.260, requires the Attorney General to take appropriate legal action if an audit "discloses malfeasance, misfeasance, or nonfeasance in office on the part of any public officer or employee".

of whether RCW 41.59.140(1)(b) is being violated is irrelevant, for the only purpose of RCW 41.59.140(1)(b) is to foster free choice of employee representatives (*Hertzka & Knowles v. NLRB,* 503 F.2d 625, 630 (9th Cir. 1974), *cert. denied,* 423 U.S. 875 (1975)).[5]

I cannot join in the majority's analysis. The Auditor is a specialized officer whose authority should be circumscribed by his specialized duties.

## II

Nonetheless, I agree with the majority that we should decide the labor law issue presented in this case. We need not do so by conferring such broad authority on the Auditor, however, for we may exercise discretion to decide issues of continuing and substantial public interest even where standing is lacking.

We have recognized such a "public interest" exception in mootness cases (*see, e.g., Alderwood Assocs. v. Washington Envtl. Coun.,* 96 Wn.2d 230, 233, 635 P.2d 108 (1981)), and it is just as applicable in cases where standing is lacking. The exception is premised on the need to provide guidance to public officers (*Sorenson v. Bellingham,* 80 Wn.2d 547, 559, 496 P.2d 512 (1972)), a consideration which is equally pertinent in cases involving standing problems. In addition, mootness and standing are intimately related. Two requirements must be met to prevent dismissal of a case as moot—the issue presented must remain "live" and the particular party presenting it must retain a legally cognizable interest in the outcome. *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 396, 63 L. Ed. 2d 479, 100 S. Ct. 1202 (1980). The second of these requirements, however, is simply a requirement that the party retain the standing which was required to initiate the action. *Compare, e.g.,* RCW 7.24.020

---

[5]Since the wording of RCW 41.59.140(1)(b) is virtually identical to that of section 8(a)(2) of the National Labor Relations Act (*compare* RCW 41.59.140(1)(b) *with* 29 U.S.C. § 158(a)(2)) and the precedents of the National Labor Relations Board are to be considered in interpreting RCW 41.59 (RCW 41.59.110(2)), federal authority is persuasive.

(person "interested" under contract may bring declaratory judgment action). Thus, the public interest exception recognized in mootness cases is equally appropriate in cases where standing is lacking.

I believe the present case comes within the purview of the public interest exception. Criteria to be considered in determining whether an issue is of sufficient public interest include the public or private nature of the question presented, the desirability of providing future guidance to public officers, and the likelihood that the question will arise again. *Sorenson v. Bellingham, supra* at 558. All of these factors militate in favor of review here. A question involving the contracts between governmental bodies and their employees is certainly public in nature. In addition, it is of great importance that we clarify the validity of these contracts. Finally, the question presented here is quite likely to recur, as the defendant education associations will no doubt seek to continue the contract provision at issue herein in future contracts, as well as extend it to other districts.

Since I agree with the majority's disposition of the labor law issue, I need not address it here.

BRACHTENBACH, J., concurs with UTTER, J.

Reconsideration denied June 27, 1983.